# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

---

MISSOURI COALITION FOR THE )
ENVIRONMENT, a Missouri non-profit )
organization, )
          )
      Plaintiff, )    Case No. 4:15-cv-00901-DGK
          )
      vs. )    Chief District Judge Greg Kays
          )
WORLDS OF FUN, LLC, a Delaware )
Limited Liability Company, and CEDAR )
FAIR, L.P., a Delaware Corporation, )
          )
      Defendants. )
          )
          )

---

## FIRST AMENDED COMPLAINT

---

Plaintiff Missouri Coalition for the Environment, by and through its undersigned counsel, hereby alleges and complains as follows:

### INTRODUCTION

1. Missouri Coalition for the Environment ("MCE") brings this action under the "citizen suit" provision of the Clean Water Act, 33 U.S.C. §1365(a)(1), against Worlds of Fun, LLC and Cedar Fair L.P (collectively "Worlds of Fun" or "WOF" or "Defendants") for their ongoing, repeated, and unlawful discharges of toxic water

pollutants into waters of the United States, including the Missouri River, Shoal Creek, and various tributaries thereof, in violation of the Clean Water Act and the terms and conditions of Worlds of Fun's wastewater discharge permit. These violations have occurred and are occurring at the Defendants' amusement park and related facilities located at 4545 Worlds of Fun Avenue, Kansas City, Missouri 64161 ("Facility").

2.      As detailed below, Worlds of Fun has regularly discharged chlorine, copper, total suspended solids (TSS), and oil and grease at concentrations that far exceed the limitations set forth in the Facility's discharge permit issued to it by the State of Missouri pursuant to the National Pollutant Discharge Elimination System ("NPDES"). *See generally* 33 U.S.C. § 1342. These pollutants, both individually and collectively, are toxic to fish, invertebrates and other aquatic life that depend on Missouri's rivers and streams for food and habitat, and degrade the aesthetic and recreational benefits obtained by MCE's members and the general public from their use of Shoal Creek and the Missouri River.

3.      Worlds of Fun has also regularly failed to conduct monitoring required by its NPDES Permit for various pollutants and parameters, and has failed to report the results of the required monitoring to the Missouri Department of Natural Resources ("MDNR") as required by its NPDES Permit. In addition, Worlds of Fun has consistently failed to properly operate and maintain its Facility, and has failed to

comply with the schedule of compliance requiring construction of wastewater treatment facility improvements pursuant to Section D of its NPDES permit.

4. Worlds of Fun's ongoing violations of the Clean Water Act have caused and, unless abated by an order of this Court, will continue to cause harm to MCE and its members who use and enjoy the Missouri River and Shoal Creek in areas near and downstream of where the violations take place. The overall mission of MCE is to protect and restore Missouri's environment through education and public engagement, and Worlds of Fun's consistent and unabated violations greatly compromise and undermine the efforts of MCE to achieve its mission on behalf of its members.

5. Neither MDNR nor the U.S. Environmental Protection Agency ("EPA") has taken action to abate the violations alleged in this complaint. In fact, recent history suggests that MDNR has failed to take its enforcement responsibilities seriously with respect to Worlds of Fun's continued NPDES permit non-compliance. Between March 2010 and September 2015, MDNR sent to Worlds of Fun at least 24 "Letters of Warning" and at least ten "Notices of Violation" purporting to address some of the ongoing and pervasive violations alleged in this complaint, and yet these letters have failed to spur compliance by Worlds of Fun, which continues to violate the effluent limitations and other conditions contained in its NPDES Permit. Citizen suit enforcement is proper in these circumstances. *See, e.g., Concerned Citizens of Bridesburg v. City of Philadelphia*, 643 F. Supp. 713, 726 (E.D. Pa. 1986) (noting propriety of an

Case 4:15-cv-00901-DGK   Document 18   Filed 01/25/16   Page 3 of 35

injunction in a Clean Air Act citizen suit where "[r]epeated notices of violations" from the state agency "have been of little, if any, practical help in preventing further violations.").

6.    MCE seeks injunctive and declaratory relief under section 505(a) and (d) of the Clean Water Act, 33 U.S.C §§ 1365(a) and (d), to prevent further violations and harm to its members, the Missouri River, and Shoal Creek. Additionally, MCE seeks civil penalties for each of the violations described above pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), as adjusted by 40 C.F.R. § 19.4, which provides for penalties of up to $37,500 per day per violation. Finally, MCE will seek attorney fees and costs as authorized under the CWA, 33 U.S.C. § 1365(d), any such other relief as is permitted by law, and any other remedy this Court deems proper.

## JURISDICTION AND VENUE

7.    Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question jurisdiction) and 33 U.S.C. § 1365(a) (Clean Water Act citizen suit provision). The relief requested is proper under 28 U.S.C. §§ 2201, 2202, and 33 U.S.C. § 1365(a).

8.    Venue lies in the Western District of Missouri pursuant to 33 U.S.C. § 1365(c)(1) and 28 U.S.C. § 1391(b) because the events giving rise to the claims alleged herein occurred at the Facility, located in Kansas City, MO, in Clay County, within this judicial district.

9.     Pursuant to section 505(b)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A), MCE notified Worlds of Fun of its violations of the Act and of MCE's intent to sue under the Act by letter dated and postmarked September 11, 2015 ("Notice Letter"), copies of which were mailed to the Administrator of the EPA, the Regional Administrator of EPA Region 7, and the Director of MDNR. The Notice Letter is attached to this Complaint as Exhibit A, and is hereby incorporated into this Complaint.

10.     More than sixty days have passed since MCE sent the Notice Letter.

11.     Neither the EPA nor MDNR has commenced or is diligently prosecuting an action against Worlds of Fun to require compliance with the NPDES permit conditions forming the basis for the claims alleged in this complaint. *See* 33 U.S.C. § 1365(b)(1)(B).

## PARTIES

12.     Plaintiff MISSOURI COALITION FOR THE ENVIRONMENT is a tax-exempt, non-profit organization with offices at 3115 South Grand Boulevard, Suite 650, St. Louis, Missouri 63118. Since 1969, MCE has been committed to protecting and restoring Missouri's environment, including the State's many waterways such as the Missouri River and Shoal Creek, from various sources of industrial pollution. The pollutant discharges that Worlds of Fun releases into tributaries of the Missouri River

and Shoal Creek are of the type that the organization's members are interested in preventing to achieve their mission of protecting and restoring the environment.

13. MCE has members who live, work, or recreate on or near Shoal Creek and the Missouri River in the vicinity of the Facility, including areas affected by the pollution that violates Worlds of Fun's NPDES Permit. These members enjoy boating, canoe racing, wildlife observation, and other recreational activities on the Missouri River near and downstream from the Facility; have aesthetic, recreational, and professional interests in protecting and maintaining the water quality of Shoal Creek and the Missouri River; and share the interests of MCE in protecting and restoring Missouri's waters, including the Missouri River and Shoal Creek, from sources of pollution.

14. MCE's members who participate in activities near and downstream from the Facility are reasonably concerned that Worlds of Fun's unlawful pollutant discharges have harmful impacts on the Missouri River and Shoal Creek, and have or will contribute to the degradation of the water quality of these waterways. These members are particularly concerned that the discharges that exceed effluent limits in the Facility's NPDES permit threaten public health; degrade the ability of these waters to sustain aquatic life and water-dependent wildlife; and diminish these MCE members' use and enjoyment of those waters.

15.     Worlds of Fun's repeated failures to monitor and report pollutant discharges reduce the aesthetic and recreational enjoyment these MCE members obtain from their use of the waters downstream from Worlds of Fun's discharges. Because discharge monitoring reports (when properly submitted to MDNR) are available to the public, Worlds of Fun's failure to monitor and report its pollutant discharges makes it more difficult for MCE and its members to determine what pollutants Worlds of Fun is discharging, and in what amounts, which thereby increases these members' exposure or risk of exposure to pollution. This failure to monitor and report also increases the uncertainty about what pollutants are actually being discharged (thereby decreasing MCE's members' enjoyment of the activities in which they engage in the vicinity of the discharges) and inhibits MCE's ability to investigate, monitor, and ascertain Worlds of Fun's effluent limitation compliance status.

16.     Moreover, Worlds of Fun's ongoing failure to properly operate its pollution control equipment and to comply with the compliance schedule obligations contained in its NPDES permit (which include required pollution control equipment upgrades) has led to the discharge of more pollution than otherwise allowed by the permit; these additional and excessive discharges also reduce the use and enjoyment of the receiving waters MCE's members would otherwise experience.

17.     Based on these concerns, these MCE members' use and enjoyment of waters downstream from Worlds of Fun's unlawful discharges, including Shoal Creek

and the Missouri River, has been, is being, and will continue to be diminished due to Worlds of Fun's repeated and numerous CWA violations. Out of concern for the impact of Worlds of Fun's pollutant discharges, and out of uncertainty caused by Worlds of Fun's failure to monitor and report all of its discharges, failure to properly operate and maintain its pollution control equipment, and to timely comply with its compliance schedule obligations, these MCE members are forced to alter their river usage patterns to avoid traveling on or near the polluted waters or take steps to minimize their exposure to polluted waters. Additionally, these members experience reduced aesthetic, recreational, and spiritual enjoyment when they do use the Missouri River near the Facility's discharges, and they feel disappointed, frustrated, and unsettled by the pollution.

18. MCE's permit violations contained herein have also contributed to the risk of economic and professional injuries to several of MCE's members, including one member who organizes and runs an annual long-distance canoe race on the Missouri River near Worlds of Fun, and another who regularly organizes and leads public river cleanup events near Worlds of Fun and has spent a significant amount of time advocating for improved water quality in the Missouri River. These members are concerned that Worlds of Fun's ongoing NPDES permit violations will contribute to the degradation of water quality in the Missouri River and may deter others from participating in activities that they organize and lead.

19.     The pollutants unlawfully discharged by Worlds of Fun, including chlorine, copper, pH, total suspended solids, and oil and grease, both individually and collectively, are known to pose a risk to human health; degrade the aesthetic value of waters containing them; and impair the ability of fish, amphibians, reptiles, and other aquatic life or water-dependent wildlife to survive and thrive in waters containing those pollutants. By contributing to the degradation of downstream water quality, Worlds of Fun's unlawful discharges of those pollutants directly causes or contributes to the injuries experienced by MCE and its members in the vicinity of the Facility.

20.     Upon information and belief, Worlds of Fun's violations have continued to occur through the date of this complaint. Unless the requested relief is granted, Worlds of Fun's permit violations will continue to injure Plaintiff and its members.

21.     Defendant WORLDS OF FUN, LLC is a Delaware limited liability company with its principal place of business located at One Cedar Point Drive, Sandusky, Ohio 44870. Worlds of Fun, LLC is the legal title owner of the property located at 4545 Worlds of Fun Avenue, Kansas City, Missouri 64161 upon which the Facility is located. Upon information and belief, Worlds of Fun, LLC is a wholly owned subsidiary of defendant Cedar Fair, L.P., and is an owner and/or operator of the Facility.

22.     Defendant CEDAR FAIR, L.P. is a Delaware limited partnership with its principal place of business located at One Cedar Point Drive, Sandusky, Ohio 44870.

Cedar Fair, L.P. is identified on Defendants' NPDES permit as the "Owner" of the Facility. Upon information and belief, Cedar Fair, L.P. is the parent company of defendant Worlds of Fun, LLC. Cedar Fair, L.P. is registered with the Missouri Secretary of State as doing business in the State of Missouri under the fictitious name registrations of Worlds of Fun and Oceans of Fun.

23.     The aforementioned Defendants, individually or collectively, own and/or operate the Facility, which is a combination amusement park and water park that also features a camping area to accommodate visitors overnight and is commonly known to the public as Worlds of Fun and Oceans of Fun. The NPDES Permit for the Facility covers discharges from both Worlds of Fun and Oceans of Fun.

## FEDERAL STATUTORY BACKGROUND

24.     Congress enacted the Clean Water Act to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The Act establishes an "interim goal of water quality which provides for the protection and propagation of fish, shellfish, and wildlife . . ." *Id.* § 1251(a)(2).

25.     Section 301(a) of the Clean Water Act prohibits the discharge of pollutants from a point source to waters of the United States unless the discharge is in compliance with certain enumerated provisions of the Act, including section 402, which establishes the NPDES permit program. *Id.* § 1311(a).

26.     "Discharge of a pollutant" means any "addition of a pollutant to navigable

waters from any point source." *Id.* § 1362(12). Pollutant is defined to include solid, chemical, and industrial waste discharged into water. *Id.* § 1362(6). A point source is "any discernible, confined and discrete conveyance," *id.* § 1362(14), and navigable waters are broadly defined as "the waters of the United States." *Id.* § 1362(7).

27. The NPDES permitting program established in Section 402 is the primary mechanism for regulating discharges of pollutants to surface waters. NPDES permits must include conditions that will ensure compliance with the Clean Water Act. 33 U.S.C. § 1342(b)(1)(A). Among other conditions, NPDES permits must contain effluent limitations, which are restrictions on the "quantities, rates, and concentrations" of pollutants discharged to waters of the United States via a point source. *Id.* § 1362(11). These effluent limitations include *technology-based* effluent limitations—established by EPA on an industry-specific basis, regardless of the quality of the receiving water—and *water quality-based* effluent limitations, which are more stringent limitations necessary to meet the water quality standards applicable to the specific waters receiving the discharge. *Id.* §§ 1311(b)(1)(C), (2)(A); 40 C.F.R. §§ 122.44(a)(1), (d).

28. All NPDES permits must include sufficient monitoring provisions and reporting requirements to determine compliance with the effluent limitations and other conditions of the permit, and must require the permittee to properly operate and

maintain the discharging facility at all times. *See* 33 U.S.C. § 1342(a)(2); 40 C.F.R. §§ 122.41(e), (j)-(l).

29. Once a NPDES permit has been issued, discharges must strictly comply with all of its terms and conditions. Any discharge of pollutants failing to comply with the terms and conditions imposed by a NPDES permit is unlawful. 33 U.S.C. § 1311(a).

30. While EPA is the primary administrator of the Clean Water Act, section 402(b) of the Act empowers the EPA to approve State-permitting programs meeting the necessary requirements of the Act. 33 U.S.C. § 1342(b). When State permitting programs become approved by EPA, the federal NPDES program is suspended in that State, but any EPA-approved State permitting program must "at all times be in accordance with" the Clean Water Act and its federal implementing regulations. *Id*. § 1342(c)(2). Missouri has an EPA-approved permitting program, and the MDNR issues NPDES permits pursuant to section 402 of the Clean Water Act and the Missouri Clean Water Law. NPDES permits issued in Missouri are called "Missouri State Operating Permits."

31. Section 505 of the Clean Water Act includes a citizen suit provision that authorizes any citizen to file suit in federal district court against any person alleged to be in violation of an "effluent standard or limitation." 33 U.S.C. § 1365(a)(1). An effluent standard or limitation includes an NPDES permit or condition thereof. *Id*. §

1365(f)(6). District courts have jurisdiction to enforce the effluent standard and limitation and to impose appropriate civil penalties. *Id.* §§ 1365(a), 1319(d). Additionally, Section 505(d) of the Act authorizes district courts to award litigations costs (including expert witness costs and reasonable attorneys' fees) to prevailing or substantially prevailing citizen-suit plaintiffs. *Id.* § 1365(d).

**STATEMENT OF THE FACTS**

**A.      General Factual Background**

32.      Defendants own and operate the Facility located at 4545 Worlds of Fun Avenue, Kansas City, MO 64161. The Facility consists of both an amusement park (Worlds of Fun) and a water park (Oceans of Fun) that serves a total market area of approximately 7 million people living in and around Kansas City. The Facility includes rides, arcade games and live entertainment, and advertises a wholesome, family-friendly atmosphere. Additionally, the Facility features the Worlds of Fun Village, which is a camping area that provides guests with overnight accommodations.

33.      The Facility discharges pollutants from ten discrete locations or "outfalls," numbered from 001 to 010, into a tributary of the Missouri River, as well as into a tributary of Shoal Creek, which itself flows into the Missouri River.

34.      The Missouri River flows over 500 miles through the State of Missouri, and is navigable by boat. More than half of Missourians get their drinking water from the Missouri River, and it is also used for various other purposes, such as recreation,

power generation, and the provision of ecosystem services. The Missouri River also provides habitat for various fish and wildlife, including least terns, piping plovers, and the endangered pallid sturgeon.

35.     Shoal Creek is a tributary of the Missouri River and runs 20.9 miles through Clay County from its headwaters to its confluence with the Missouri River. Shoal Creek is a classified stream with a use designation supporting livestock and wildlife watering, aquatic life, and whole body contact recreation. *See* Missouri Regulation 10 CSR 20-7.031, Table H.

**B.     Worlds of Fun's NPDES Permit**

36.     On November 14, 2008, MDNR issued Missouri State Operating Permit No. MO-0103659 ("NPDES Permit") to Cedar Fair, L.P., authorizing the Facility to discharge stormwater and wastewater from Outfalls 001-004 and 006-010 into a tributary of Shoal Creek. The NPDES Permit also authorized the Facility to discharge from Outfall 005 into a tributary of the Missouri River.

37.     Worlds of Fun's NPDES Permit includes, among other conditions, numeric effluent limitations, monitoring and reporting requirements, requirements to report instances of noncompliance with effluent limitations, the requirement to properly operate and maintain all pollution treatment and control systems, and a requirement to satisfy a schedule of compliance.

38.     As relevant to the claims alleged herein, Section A of Worlds of Fun's

NPDES Permit includes the following numeric effluent limitations and monitoring

requirements applicable at the various outfalls:

| Outfall Number and Effluent Parameter | Interim Effluent Limitations (Effective through Nov. 14, 2011) | | | Final Effluent Limitations (Effective after Nov. 14, 2011) | | | Monitoring Requirements | |
|---|---|---|---|---|---|---|---|---|
| | Daily Maximum | Weekly Average | Monthly Average | Daily Maximum | Weekly Average | Monthly Average | Measurement Frequency | Sample Type |
| Outfalls #001, #008, & #009 | | | | | | | | |
| Flow (MGD) | * | | * | * | | * | Once/month | 24 hr. total |
| Rainfall (inches) | * | | * | * | | * | Once/month | Grab |
| Biological Oxygen Demand (MGD) | | 45 | 30 | | 45 | 30 | Once/month | Grab |
| pH – Units (SU) | 6.5-9.0 | | 6.5-9.0 | 6.5-9.0 | | 6.5-9.0 | Once/month | Grab |
| TSS (mg/L) | | 45 | 30 | | 45 | 30 | Once/month | Grab |
| Total Residual Chlorine (mg/L) | 0.019 | | 0.019 | 0.017 | | 0.008 | Once/month | Grab |
| Oil and Grease (mg/L) | 15 | | 10 | 15 | | 10 | Once/month | Grab |
| Copper (µg/L) | 45.9 | | 22.9 | 17.1 | | 8.5 | Once/month | Grab |
| Aqua Blue Lake Dye (mg/L) | * | | * | * | | * | Once/month | Grab |
| Outfalls #002, #003, & #004 | | | | | | | | |
| Flow (MGD) | * | | * | * | | * | Once/month | 24 hr. total |
| Rainfall (inches) | * | | * | * | | * | Once/month | Grab |
| Oil and Grease (mg/L) | 15 | | 10 | 15 | | 10 | Once/month | Grab |
| Outfalls #005, #006, & #007 | | | | | | | | |

| | | | | | | | Once/month | Grab |
|---|---|---|---|---|---|---|---|---|
| Flow (MGD) | * | | * | * | | * | Once/month | 24 hr. total |
| Rainfall (inches) | * | | * | * | | * | Once/month | Grab |
| Biological Oxygen Demand (MGD) | | 45 | 30 | | 45 | 30 | Once/month | Grab |
| pH – Units (SU) | 6.5-9.0 | | 6.5-9.0 | 6.5-9.0 | | 6.5-9.0 | Once/month | Grab |
| TSS (mg/L) | | 45 | 30 | | 45 | 30 | Once/month | Grab |
| Total Residual Chlorine (mg/L) | 0.019 | | 0.019 | 0.017 | | 0.008 | Once/month | Grab |
| Oil and Grease (mg/L) | 15 | | 10 | 15 | | 10 | Once/month | Grab |
| Copper (µg/L) | 45.9 | | 22.9 | 17.1 | | 8.5 | Once/month | Grab |
| Outfall #010 | | | | | | | | |
| Flow (MGD) | * | | * | * | | * | Once/month | 24 hr. total |
| Biological Oxygen Demand (MGD) | | 45 | 30 | | 45 | 30 | Once/month | Grab |
| pH – Units (SU) | 6.5-9.0 | | 6.5-9.0 | 6.5-9.0 | | 6.5-9.0 | Once/month | Grab |
| TSS (mg/L) | | 45 | 30 | | 45 | 30 | Once/month | Grab |
| Total Residual Chlorine (mg/L) | 0.019 | | 0.019 | 0.017 | | 0.008 | Once/month | Grab |
| Oil and Grease (mg/L) | 15 | | 10 | 15 | | 10 | Once/month | Grab |
| Copper (µg/L) | * | | * | 17.1 | | 8.5 | Once/month | Grab |
| Dissolved Oxygen (mg/L) | * | | * | * | | * | Once/month | Grab |
| Aqua Blue Lake Dye | * | | * | * | | * | Once/month | Grab |

Case 4:15-cv-00901-DGK   Document 18   Filed 01/25/16   Page 16 of 35

| (mg/L) | | | | | | | |
|--------|--|--|--|--|--|--|--|

* - Monitoring requirement only

39.     According to the MDNR, "The daily maximum limit is the maximum

daily value for any daily sample. The monthly average limit is the maximum allowable

value for all daily values averaged over one month." MDNR, Guidance for Water

Quality and Antidegradation Review Assistance (2010), *available at*

http://dnr.mo.gov/env/wpp/permits/docs/part3a-procedures-tbel.pdf. Similarly, a

weekly average limit is the maximum allowable value for all daily values averaged over

one week.

40.     Worlds of Fun is required by its NPDES Permit to collect effluent

samples at each outfall at the frequency specified by the permit. The type of test to be

used and frequency in which it is to be performed are described in Section A of the

NPDES Permit.

41.     Section A of Worlds of Fun's NPDES Permit requires Worlds of Fun to

submit monthly discharge monitoring reports ("DMRs") for the Facility's discharges to

MDNR. A DMR is a standardized agency form used "for the reporting of self-

monitoring results by permittees." 40 C.F.R. § 122.2. These DMRs must contain the

results of any effluent sampling conducted by Worlds of Fun, and must be submitted

to MDNR regardless of whether a discharge has occurred from the Facility. Before

submission to MDNR, a responsible official for Worlds of Fun is required to sign and

certify that information contained in its DMRs is true, accurate, and complete. *See*

NPDES Permit, Section B(I)(B)(19) (citing to 40 C.F.R. § 122.6, since re-codified at 40

C.F.R. § 122.22).

**C.    Worlds of Fun's Violations of Numeric Effluent Limitations for Chlorine, Copper, Oil & Grease, pH, and Total Suspended Solids (NPDES Permit Section A)**

42.    The Facility's DMRs and other related records submitted to MDNR

demonstrate Worlds of Fun's history of exceeding its numeric effluent limits for the

pollutants chlorine, copper, oil & grease, pH, and total suspended solids ("TSS").

43.    Chlorine is a greenish-yellow gas that is soluble in water, and is typically

used to disinfect water. It can irritate the eyes and skin of aquatic animals, and can be

toxic to plants and animals living in aquatic ecosystems. Chlorine can also irritate the

eyes and skin of persons recreating on waters with high chlorine levels.

44.    Copper is a natural occurring trace element found in the earth's crust and

in surface waters. While low concentrations of copper are essential to all plants and

animals, elevated levels of copper in waterways can be toxic to fish and other aquatic

life. The effects of copper toxicity to freshwater organisms include impaired

respiration, osmoregulation, brain function, and disease resistance, among other

effects. High concentrations of copper can also have negative effects on human health

including irritation of the nose, mouth and eyes, and can cause nausea.

45.     **Oil and grease** can pose a wide range of human health problems, from affecting the liver, kidneys and blood to increasing the risk of cancer. Low levels of oil pollution can reduce aquatic organisms' ability to reproduce and survive. Oils can also create chemical oxygen demand.

46.     pH is a term that is used to indicate the degree of alkalinity or acidity of a solution ranked on a scale of 0 to 14, with pH 7 being neutral. When pH is below 7, the solution is acidic and when the pH is above 7, the solution is alkaline, or commonly called "basic." pH affects many chemical and biological processes in the water. For example, different organisms flourish within different ranges of pH. Most aquatic animal species prefer a range of 6.5-8.0. A pH outside this range reduces the diversity of aquatic life in the stream because it stresses the physiological systems of most organisms and can reduce reproduction.

47.     TSS includes fine organic debris and other particulate matter. Higher concentrations of TSS can serve as carriers of toxics, which readily cling to suspended particles. Elevated TSS concentrations also affect water clarity by decreasing the passage of light through water, thereby blocking light from reaching submerged vegetation, which reduces rates of photosynthesis. High TSS can also increase the surface water temperature because the suspended particles absorb heat from sunlight. The decrease in water clarity caused by TSS can affect the ability of fish to see and catch food. Suspended sediment can also clog fish gills, reduce growth rates, decrease

resistance to disease, and prevent egg and larval development. When suspended solids settle to the bottom of a water body, they can smother the eggs of fish and aquatic insects, as well as suffocate newly hatched insect larvae.

48. The Facility's NPDES Permit expired on November 13, 2013, but has been administratively continued pursuant to 40 C.F.R. § 122.6(d)(1) and Missouri State Regulation 10 CSR 20-6.010(10)(E). Worlds of Fun's NPDES Permit thus continues in full force and effect.

49. MDNR has designated the following uses for the Missouri River in the vicinity of WOF's discharges: irrigation, livestock & wildlife watering, protection of warm water aquatic life and human health-fish consumption, cool water fishery, cold water fishery, whole body contact recreation, secondary contact recreation, drinking water supply, industrial, and groundwater.

50. MDNR has designated the following uses for Shoal Creek in the vicinity of WOF's discharges: livestock & wildlife watering, protection of warm water aquatic life and human health-fish consumption, and whole body contact recreation.

51. As required by the Clean Water Act, the effluent limitations in WOF's NPDES permit are established at levels intended to ensure that the designated uses of Shoal Creek and the Missouri River are maintained. Exceedence of those effluent limitations, therefore, threatens the water's ability to support its designated uses.

52.     Worlds of Fun has repeatedly exceeded and continues to exceed the

numeric effluent limitations contained in its NPDES Permit for chlorine, copper, oil &

grease, pH, and TSS. As identified in MCE's Notice Letter, since September 2010, as

determined by Worlds of Fun's own effluent sampling and as reported in its DMRs,

Worlds of Fun has exceeded various numeric effluent limitations at several of its

outfalls least 159 times, as shown in the summary table below:

*Table 1: Worlds of Fun's Effluent Limitation Exceedances Based on September 2010 –
July 2015 DMRs*

| Parameter | Number of Discrete Violations | Outfalls Where Violations Occurred |
| --- | --- | --- |
| Oil and Grease | 11 | 3, 4, and 9 |
| Chlorine | 34 | 1, 5, 6, 7, and 9 |
| TSS | 41 | 1, 5, 9, and 10 |
| Copper | 70 | 1, 5, 6, 7, 8, 9, and 10 |
| pH | 3 | 5, 6, and 7 |

The details of each self-reported effluent limitation violation between September 2010

and July 2015, including the date, outfall, parameter, effluent limitation, and sampling

result are included in Table 1 of MCE's Notice Letter, pages 9-13, which is re-alleged

and incorporated herein.

53.     Many of Worlds of Fun's exceedances identified in Table 1, above, and

described in more detail in the attached Notice Letter, are violations of a weekly or

monthly average effluent limitation. In such instances, Worlds of Fun is deemed to be

in violation of its NPDES Permit and the Clean Water Act on each day during the

applicable averaging period. *See, e.g., United States v. Amoco Oil Co.*, 580 F. Supp. 1042, 1045 (W.D. Mo. 1984).

54.     Moreover, since sending the Notice Letter, MCE has learned of additional exceedances of Worlds of Fun's effluent limitations. These additional exceedances are based upon Worlds of Fun's DMRs for the months of June and August 2015, as well as sampling done by MDNR during an inspection of the Facility in June 2015. These violations are shown in the summary table below:

*Table 2: Additional Worlds of Fun's Effluent Limitation Exceedances*

| Date | Outfall | Parameter | Effluent Limit | Result |
|------|---------|-----------|----------------|--------|
| June 16, 2015 | 001 | ph | 6.5 – 9.0 (monthly average) | 6.48 |
| June 16, 2015 | 001 | Chlorine | 0.017 mg/L (daily maximum) | 0.04 mg/L |
| June 16, 2015 | 005 | Copper | 17.1 µg/L (daily maximum) | 29 µg/L |
| June 16, 2015 | 005 | Chlorine | 0.017 mg/L (daily maximum) | 0.07 mg/L |
| June 16, 2015 | 007 | Copper | 17.1 µg/L (daily maximum) | 20 µg/L |
| June 16, 2015 | 008 | Chlorine | 0.017 mg/L (daily maximum) | 0.07 mg/L |
| June 16, 2015 | 008 | TSS | 30 mg/L (monthly average) | 90 mg/L |
| June 2015 | 008 | TSS | 45mg/L (monthly average) | 47 mg/L |
| June 2015 | 009 | Chlorine | 0.008 mg/L (monthly average) | 1.56 mg/L |
| June 16, 2015 | 009 | Chlorine | 0.017 mg/L (daily maximum) | 2.2 mg/L |
| June 16, 2015 | 010 | Chlorine | 0.017 mg/L (daily maximum) | 0.09 mg/L |

Case 4:15-cv-00901-DGK   Document 18   Filed 01/25/16   Page 22 of 35

| Date | Outfall | Parameter | Effluent Limit | Result |
|------|---------|-----------|----------------|--------|
| Aug. 2015 | 003 | Oil and Grease | 10 mg/L (monthly average) | 12.8 mg/L |

55.     Although MCE does not at this time have more recent DMRs, upon information and belief Worlds of Fun has not taken action to improve the systemic flaws in its wastewater and stormwater treatment systems, and thus its effluent limitation exceedances are ongoing, and will continue to occur unless and until they are abated by an order of the court.

**D.     Worlds of Fun's Monitoring and Reporting Violations (NPDES Permit Section A)**

56.     Section A of Worlds of Fun's NPDES Permit requires the Facility to monitor the parameters that it is authorized to discharge once per month, and send the outcomes of these monthly monitoring reports to MDNR. More specifically, the NPDES Permit provides that if the Facility is unable to or will not be able to comply with any effluent limitation, Worlds of Fun shall notify MDNR in writing within five days of becoming aware of the inability to comply. NPDES Permit Section B(1).

57.     Furthermore, the NPDES Permit requires that Worlds of Fun orally report instances of noncompliance that may endanger health or the environment within 24 hours of becoming aware of the occurrence, and additionally submit a written report within 5 days.

58.     Upon information and belief, and based upon public records obtained

from MDNR, Worlds of Fun did not comply with the above-mentioned reporting requirements for any of the effluent limitation violations alleged in this complaint.

59.     Similarly, from September 2010 to July 2015, Worlds of Fun repeatedly failed to monitor and/or report the values of effluent samples collected, including but not limited to samples for oil and grease, chlorine, TSS, copper, pH, and aqua blue lake dye, as required by Section A of its NPDES Permit. *See* Notice Letter, Table 4. In eleven different months, Worlds of Fun did not submit any records showing that it conducted any of the required monitoring. *See id*.

60.     Worlds of Fun's monitoring and reporting violations are repetitive, are ongoing, and will continue to occur unless and until they are abated by an order of the court.

E.      **Worlds of Fun's Violations of the Requirement to Properly Operate and Maintain its Facilities (NPDES Permit Section B(I)(B)(3)).**

61.     Worlds of Fun's NPDES Permit requires that Worlds of Fun properly operate and maintain all pollution treatment and control systems within the Facility that are necessary to comply with the effluent limits in the NPDES Permit. *See* NPDES Permit Section B(I)(B)(3).

62.     The Facility's continued and regular exceedance of allowable effluent limits demonstrates that Worlds of Fun is not in compliance with this requirement of the permit. Furthermore, the Facility's monitoring and reporting violations and regular

failure to report instances of noncompliance indicates that Defendants are not sufficiently maintaining the systems necessary to achieve compliance with their NPDES Permit.

63.     Worlds of Fun's violations of this permit condition are ongoing, and will continue to occur unless and until they are abated by an order of the court.

**F.      Failure to Satisfy Schedule of Compliance Requirements (NPDES Permit Section D)**

64.     Worlds of Fun's NPDES Permit established interim effluent limitations for the first three years after its issuance, after which final effluent limitations would become applicable, starting November 14, 2011. *See* NPDES Permit Section A.

65.     The NPDES Permit specifies that Worlds of Fun is required to construct wastewater treatment facility improvements to ensure compliance with the final effluent limitations if the Facility cannot comply with the effluent limitations for copper and chlorine after one year of issuance of the NPDES Permit. *See* NPDES Permit Section D. Specifically, the NPDES Permit requires Worlds of Fun to take the following sequential actions based on monitoring data collected during the first twelve months after permit issuance:

A.      "[D]etermine, by analyzing effluent data, if the wastewater treatment facility could comply with the final effluent limitations for" copper and chlorine;

B.      If Worlds of Fun determines that it cannot comply with the final effluent limitations for copper and chlorine, "submit, within twelve (12) months

after the end of the twelfth month monitoring event . . . a completed application for a construction permit . . . for providing wastewater treatment facility improvements to comply with the final effluent limits for" copper and chlorine;

C.  "Within one year of issuance of the construction permit, construct the permitted wastewater treatment facility improvements[;]" and

D.  "Within fifteen (15) calendar days of completion of construction of wastewater treatment facility improvements, submit a Statement of Work Completed form . . . [and] an application for a Missouri State Operating Permit modification[.]"

NPDES Permit, Section D, ¶¶ 2-5.

66.     Based upon its own effluent data contained in its DMRs, and upon information and belief, Worlds of Fun has repeatedly violated, and continues to violate, both the interim and the final effluent limitations for copper and chlorine. These continued violations triggered, and continue to trigger, the compliance schedule obligations identified above and contained in Section D of Worlds of Fun's NPDES Permit, including the obligations to (a) apply for a construction permit for wastewater treatment system improvements; (b) construct the needed wastewater treatment system improvements; and (c) apply for a modification of its NPDES Permit. Moreover, Worlds of Fun has not constructed wastewater treatment facility improvements necessary to meet the final effluent limitations and ensure compliance with its NPDES Permit. Consequently, Worlds of Fun is in violation of the NPDES Permit's Schedule of Compliance.

67. These violations are ongoing, and will continue to occur unless and until they are abated by an order of the court.

### FIRST CLAIM FOR RELIEF
**Violations of Numeric Effluent Limitations**
**(Violations of 33 U.S.C. §§ 1311(a), 1342)**

68. Plaintiff incorporates and re-alleges each of the preceding paragraphs.

69. Section A of Worlds of Fun's NPDES Permit imposed numeric effluent limitations on the Facility's discharges of chlorine, copper, oil & grease, pH, and TSS, among other pollutants and parameters.

70. Worlds of Fun exceeded the numeric effluent limitations contained in its NPDES Permit for chlorine, copper, oil & grease, pH, and TSS at least 159 times between September 2010 and July 2015, as detailed in Table 1 of MCE's Notice Letter, which is incorporated into this complaint.

71. Each occasion upon which Worlds of Fun exceeds an effluent limitation contained in its NPDES Permit is a violation of an "effluent standard or limitation" under the Clean Water Act's citizen suit provision, 33 U.S.C. § 1365(a)(1), (f)(6).

72. Each occasion upon which Worlds of Fun exceeds an effluent limitation contained in its NPDES Permit constitutes a separate and distinct violation of its NPDES Permit and sections 301(a) and 402 of the Clean Water Act. 33 U.S.C. §§ 1311(a), 1342.

73. Defendants' effluent limitation violations described above have been occurring consistently since at least September 2010, are ongoing, and are likely to recur in the future absent redress from this Court.

74. Worlds of Fun's effluent limitation violations alleged above warrant the imposition of declaratory and injunctive relief and the assessment of civil penalties in the amount of up to $37,500 per day of violation. *See* 33 U.S.C. §§ 1365(a), 1319(d); 40 C.F.R. § 19.4.

## SECOND CLAIM FOR RELIEF
### Violations of Monitoring and Reporting Requirements
### (Violations of 33 U.S.C. §§ 1311(a), 1342)

75. Plaintiff incorporates and re-alleges each of the preceding paragraphs.

76. Worlds of Fun has consistently and repeatedly failed to comply with the monitoring and reporting requirements set forth in Section A of its NPDES Permit. Worlds of Fun has repeatedly failed to report the values of effluent samples collected, and has repeatedly failed to perform the required analysis for oil and grease, chlorine, TSS, copper, and pH, as required by Section A of its NPDES Permit. *See* Notice Letter at Section III, and Table 4.

77. Worlds of Fun has repeatedly failed to provide timely notice to MDNR of its inability to comply with the daily maximum effluent limitations contained in NPDES Permit, in violation of Section B(I)(B)(2) of that Permit.

Case 4:15-cv-00901-DGK   Document 18   Filed 01/25/16   Page 28 of 35

78.     Worlds of Fun repeatedly failed to provide timely written reports to MDNR of any instances of noncompliance that may endanger health or the environment, in violation of Section B(I)(B)(2) of its NPDES Permit.

79.     Worlds of Fun has repeatedly failed to submit its DMRs to MDNR in a timely manner, including for the months of November and December, 2010; January, February, November, and December, 2011; January, February, March, and August, 2012; and December 2014.

80.     Each occasion upon which Worlds of Fun fails to comply with the monitoring and reporting requirements of its NPDES Permit is a violation of an "effluent standard or limitation" under the Clean Water Act's citizen suit provision, 33 U.S.C. § 1365(a)(1), (f)(6).

81.     Each occasion upon which Worlds of Fun fails to comply with the monitoring and reporting requirements of its NPDES Permit as alleged above constitutes a separate and distinct violation of its NPDES Permit and sections 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342.

82.     Worlds of Fun's monitoring and reporting violations alleged above are ongoing, and there is a reasonable likelihood they will recur in the future absent redress from this Court.

83.     Worlds of Fun's monitoring and reporting violations alleged above warrant the imposition of declaratory and injunctive relief and the assessment of civil

penalties in the amount of up to $37,500 per day of violation. *See* 33 U.S.C. §§ 1365(a), 1319(d); 40 C.F.R. § 19.4.

**THIRD CLAIM FOR RELIEF**
**Violation of the Requirement to Properly Operate and**
**Maintain Pollution Controls**
**(Violations of 33 U.S.C. §§ 1311(a), 1342)**

84.     Plaintiff incorporates and re-alleges each of the preceding paragraphs.

85.     Worlds of Fun's repeated violations of the numeric effluent limitations and monitoring and reporting requirements contained in its NPDES Permit, as alleged above, demonstrate that Worlds of Fun has failed to properly operate and maintain all pollution treatment and control facilities and systems necessary to comply with its NPDES Permit, in violation of Section B(I)(B)(3) of that permit.

86.     Each occasion upon which Worlds of Fun fails to properly operate and maintain all pollution treatment and control facilities and systems necessary to comply with its NPDES Permit is a separate and distinct violation of Worlds of Fun's NPDES Permit and sections 301(a) and 402 of the Clean Water Act. 33 U.S.C. §§ 1311(a) and 1342.

87.     Each occasion upon which Worlds of Fun fails to properly operate and maintain all pollution treatment and control facilities and systems necessary to comply with its NPDES Permit constitutes a separate and distinct a violation of an "effluent standard or limitation" under the Clean Water Act's citizen suit provision, 33 U.S.C. §

1365(a)(1), (f)(6).

88.     Worlds of Fun's violations of the requirement to properly operate and maintain all pollution treatment and control facilities and systems necessary to comply with its NPDES Permit are ongoing, and there is a reasonable likelihood they will recur in the future absent redress from this Court.

89.     Worlds of Fun's violations of the requirement to properly operate and maintain all pollution treatment and control facilities and systems alleged above warrant the imposition of declaratory and injunctive relief and the assessment of civil penalties in the amount of up to $37,500 per day of violation. *See* 33 U.S.C. §§ 1365(a), 1319(d); 40 C.F.R. § 19.4.

## FOURTH CLAIM FOR RELIEF
### Failure to Satisfy Schedule of Compliance Requirements
### (Violations of 33 U.S.C. §§ 1311(a), 1342)

90.     Plaintiff incorporates and re-alleges each of the preceding paragraphs.

91.     Section D of Worlds of Fun's NPDES Permit requires it to develop wastewater treatment facility improvements if, after 12 months of monitoring following the issuance of the NPDES Permit, Worlds of Fun is unable to comply with its final effluent limitations for chlorine and copper, and to apply for a construction permit from the MDNR for the construction of such improvements.

92.     Upon information and belief, Worlds of Fun did not comply with the interim or final limits from permit issuance in November 2008 until November of

Case 4:15-cv-00901-DGK   Document 18   Filed 01/25/16   Page 31 of 35

2009, thus triggering the NPDES Permit condition requiring WOF to construct wastewater treatment facility improvements.

93.     Worlds of Fun has repeatedly failed to comply with its final effluent limitations for chlorine and copper, and has failed to implement the compliance schedule obligations contained in Section D of its NPDES Permit (including the requirement to construct wastewater treatment facility improvements as necessary to comply with its NPDES Permit and achieve the specified effluent limitations for copper and chlorine).

94.     Each day since November 14, 2009 that Worlds of Fun fails to implement the compliance schedule obligations contained in Section D of its NPDES Permit (including applying for a construction permit and constructing wastewater treatment facility improvements), it violates an "effluent standard or limitation" under the Clean Water Act's citizen suit provision, 33 U.S.C. § 1365(a)(1), (f)(6).

95.     Each day since November 14, 2009 (12 months after issuance of its NPDES Permit) that Worlds of Fun fails to implement the compliance schedule obligations contained in Section D of its NPDES Permit (including the requirement to construct wastewater treatment facility improvements as necessary to comply with its NPDES Permit and achieve the specified effluent limitations for copper and chlorine) constitutes a separate and distinct violation of Defendants' NPDES Permit and sections 301(a) and 402 of the Clean Water Act. 33 U.S.C. §§ 1311(a) and 1342.

96. These violations are ongoing, continuous, and there is a reasonable likelihood they will recur absent redress from this Court.

97. Worlds of Fun's violations of the compliance schedule requirements contained in Section D of its NPDES Permit warrants the imposition of declaratory and injunctive relief and the assessment of civil penalties in the amount of up to $37,500 per day of violation. 33 U.S.C. §§ 1365(a), 1319(d); 40 C.F.R. § 19.4.

## RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

98. Declare that Worlds of Fun has violated and is continuing to violate specified sections of the Facility's NPDES Permit and sections 301(a) and 402 of the Clean Water Act;

99. Issue an injunction ordering Worlds of Fun to come into immediate compliance with the terms and conditions of its NPDES Permit, and to take such action as may be necessary to discontinue the unlawful discharge of pollutants into the tributaries of the Missouri River and Shoal Creek that violate the Facility's NPDES Permit and the Clean Water Act;

100. Order Worlds of Fun to pay an appropriate civil penalty of up to $37,500 per day per violation for all violations of the Clean Water Act pursuant to Sections 309(d) and 505(a) of the Clean Water Act, 33 U.S.C. §§ 1319(d) and 1365(a);

101.    Issue an order awarding Plaintiff its costs of litigation, including its

reasonable attorney and expert witness fees, as authorized by Section 505(d) of the

Clean Water Act, 33 U.S.C. § 1365(d); and

102.    Award such other relief as this Court deems just and proper.

Dated this 25th day of January, 2016.

Respectfully submitted,

s/ James N. Saul

James N. Saul (*Pro Hac Vice*)
Lia Comerford  (*Pro Hac Vice*)
Earthrise Law Center
Lewis & Clark Law School
10015 SW Terwilliger Blvd.
Portland, OR  97219
Tel: (503) 768-6929 (Saul)
Tel: (503) 768-6823 (Comerford)
Fax: (503) 768-6642
jsaul@lclark.edu
comerfordl@lclark.edu

Robert Menees (MO Bar No. 62367)
Great Rivers Environmental Law Center
319 N. Fourth St., Suite 800
St. Louis, MO 63102
Tel:  (314) 231-4181
Fax:  (314) 231-4148
Email:  bobmenees@greatriverslaw.org

*Attorneys for Plaintiff Missouri Coalition for the*
*Environment*

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2016, I filed the foregoing First Amended Complaint using the Court's CM/ECF system, which will automatically serve a copy of the same upon all counsel of record.


s/ James N. Saul

*Counsel for plaintiff Missouri Coalition for the Environment*