## SETTLEMENT AGREEMENT

Plaintiff Missouri Coalition for the Environment ("Plaintiff") and Defendants Worlds of Fun, LLC and Cedar Fair, L.P. ("Defendants"), through their undersigned counsel, hereby covenant and agree as follows:

WHEREAS, Plaintiff is a not-for-profit corporation, qualified to do business in Missouri, with its principal office located at 3115 S Grand Blvd #650, St. Louis, Missouri 63118;

WHEREAS, Plaintiff exists for the dedicated purposes of promoting clean water, clean air, clean energy, and a healthy environment throughout the State of Missouri;

WHEREAS, Defendants Worlds of Fun, LLC, and Cedar Fair, L.P own and operate an amusement park at 4545 Worlds of Fun Avenue, Kansas City, Missouri 64161 (hereinafter "Facility");

WHEREAS, as part of its operations, the Facility discharges stormwater into an unnamed tributary to Shoal Creek, a tributary of the Missouri River, and an unnamed tributary to the Missouri River;

WHEREAS, the Facility's discharges are authorized and limited by National Pollutant Discharge Elimination System ("NPDES") Permit No. MO-0103659, issued pursuant to section 402 of the Federal Water Pollution Control Act, 33 U.S.C. § 1342, *et seq.*, § 644.082 R.S.Mo of the Missouri Clean Water Law, and their implementing regulations under Federal and Missouri law;

WHEREAS, on September 11, 2015, Plaintiff served Defendants with a 60-day notice of intent to sue letter ("Notice Letter") stating its intent to file suit for violations of the Clean Water Act. The Notice Letter alleged violations of the Clean Water Act for Defendants' discharges of pollutants into tributaries to the Missouri River in violation of its NPDES Permit No. MO-

0103659, as well as monitoring and reporting violations, a violation of the requirement to properly operate and maintain pollution controls, and a violation of the requirement to satisfy a Schedule of Compliance;

WHEREAS, on November 16, 2015, Plaintiff filed a complaint under section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), against Defendants in the United States District Court for the Western District of Missouri ("Complaint") in the action captioned as *Missouri Coalition for the Environment v. Worlds of Fun, LLC, et al.*, Case No. 4:15-cv-00901-DGK ("Action"), and subsequently filed an amended complaint on January 25, 2016;

WHEREAS, the Missouri Department of Natural Resources has issued letters of warning and notices of violation to Defendants with respect to Defendants' discharges, and has referred Defendants to the Missouri Attorney General's Office for civil enforcement, but no civil action has yet been filed by the State of Missouri regarding the allegations set forth in the Complaint;

WHEREAS, the Missouri Department of Natural Resources has released a draft revised NPDES permit for Defendants' Facility, but such permit has not yet been finally issued;

WHEREAS, Defendants deny they have violated or are violating the Clean Water Act, and deny all allegations in the Complaint;

WHEREAS, Plaintiff and Defendants, through their authorized representatives, without any admission or final adjudication of any issue of fact or law and without any waiver of any claim or defense except as expressly set forth herein, have reached a settlement that they consider to be a fair, adequate, and equitable resolution of Plaintiff's claims and in the public interest;

WHEREAS, the Parties voluntarily agree to enter into this Settlement Agreement as an appropriate way to resolve the claims Plaintiff has brought in this Action;

NOW THEREFORE, in consideration of the mutual covenants and promises contained herein, and for good and valuable consideration, the receipt and the sufficiency of which is acknowledged by each Party, the Parties mutually agree, represent, and warrant as follows:

## I. JURISDICTION AND VENUE

1. Exclusively for purposes of enforcement and/or interpretation of this Settlement Agreement, the parties acknowledge that the Court has jurisdiction over the subject matter of this Action pursuant to section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2. Venue is appropriate in the Western District of Missouri pursuant to section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility where the alleged violations took place is located within this District.

## II. DEFINITIONS

3. Whenever the following terms are used in this Agreement, the following definitions shall apply:

   a. "Plaintiff" means Missouri Coalition for the Environment.

   b. "Defendants" means Worlds of Fun, LLC, and Cedar Fair, L.P., both individually and collectively.

   c. "Party" means either Plaintiff or Defendants.

   d. "Parties" means both Plaintiff and Defendants, collectively.

   e. "EPA" means the U.S. Environmental Protection Agency

   f. "MDNR" means the Missouri Department of Natural Resources

   g. "NPDES Permit" means Permit No. MO-0103659, issued to Defendants by MDNR pursuant to the National Pollutant Discharge Elimination System, and any prior or successor permit.

h.  "Action" means the civil action filed by Plaintiff against Defendants, captioned as *Missouri Coalition for the Environment v. Worlds of Fun, LLC, et al.*, Case No. 4:15-cv-00901-DGK (filed Nov. 16, 2015).

i.  "Facility" means the amusement park, water park, and appurtenant buildings, structures, and facilities owned by Defendants and located at 4545 Worlds of Fun Avenue, Kansas City, Missouri 64161.

j.  "Effective Date" means the date upon which this Settlement Agreement is signed by both Parties and is incorporated into an order of the Court dismissing this case.

## III. FACILITY COMPLIANCE PLAN

4.  Defendants agree to retain an engineering firm to develop a Facility Compliance Plan ("Plan") for the purpose of improving the Facility's management of stormwater runoff such that operation of the Facility within that Plan will be expected to achieve consistent compliance with the effluent limitations, terms, and conditions of Defendants' NPDES Permit.

5.  The Plan shall be developed under the supervision of, and signed by, a professional engineer (P.E.) certified in the State of Missouri. The selected engineering firm shall have demonstrated experience and expertise in the design of green infrastructure projects (or, alternatively, Defendants shall separately retain a green infrastructure consulting firm to assist the engineering firm with the development of the Plan).

6.  The contents of the Plan will be developed by and between Defendants, their engineers and consultants, and shall be submitted to MDNR.

4

7.  Defendants agree to include, as part of the Plan, the installation of one or more educational kiosks at the Facility for the purpose of educating visitors about storm water runoff pollution and the steps Defendants are taking to reduce it.

8.  To the extent feasible and where appropriate given the design and layout of the Facility and related costs, the Plan will incorporate the use of "green infrastructure" principles and practices as reflected in MDNR's Guide to Green Infrastructure, available at http://dnr.mo.gov/env/wpp/stormwater/mo-gi-guide.htm, and the documents and resources available at https://www.epa.gov/green-infrastructure.

9.  Defendants will develop the Plan by the date ordered by, or mutually agreed with, MDNR, but in any event no later than one (1) year following the latter of: (1) finalization of the Facility's new NPDES Permit (including the final resolution of any related appeals), or (2) the date of entry of this Settlement Agreement.

10. Defendants will provide a copy of the Plan to Plaintiff within 30 days of the completion of its development under Paragraph 9 above. Plaintiff shall have 60 days to review and comment upon the Plan. Defendants agree to give due consideration to Plaintiff's comments and to provide a written response thereto within 60 days of their receipt of Plaintiff's comments; however, Plaintiff's comments shall be advisory only, and Defendants shall not be required to amend the Plan based upon Plaintiff's comments.

11. Defendants shall implement the Plan by the earlier of (a) the date ordered by or mutually agreed with MDNR, or (b) two years following the date MDNR approves the Plan; provided, however, that if MDNR declines to participate in the Plan review and approval process, Defendants shall implement the Plan no later than two years after responding to Plaintiff's comments under Paragraph 10 above. If the Plan indicates that specified actions

5

included in the Plan will either (i) require substantial on-site work and therefore will take longer than two years to complete, or (ii) would interfere with Park operations if completed on a more expedited schedule, then additional time beyond this two year period shall be permitted for completion of such specified Plan actions. In any event, all such actions shall be completed within four years of the date the implementation period begins. Plan actions that are ongoing in nature may continue to be implemented beyond four years if the Plan so indicates.

12. Until such time as the Plan is fully implemented (excluding actions of a continuing nature), Defendants agree to provide a written status report to both Plaintiff and the MDNR regarding Plan implementation at least once every year.

## IV. SUPPLEMENTAL ENVIRONMENTAL PROJECTS (SEPs)

13. In lieu of payment of statutory civil penalties pursuant to 33 U.S.C. §§ 1319(d) and 1365(a), Defendants shall make payments totaling $100,000 ("SEP Funds") to fund the Supplemental Environmental Projects ("SEPs") described below for the benefit of the waters in the vicinity of the Facility. Payment of the SEP Funds shall be made within 60 days of the Court's order dismissing this case.

14. SEP Funds in the amount of $50,000 shall be paid to the Missouri Stream Team Watershed Coalition ("MSTWC"), a Missouri nonprofit organization that is tax-exempt pursuant to section 501(c)(3) of the Internal Revenue Code, and shall be used for the dedicated purpose of developing and implementing a "Stream Team" for Shoal Creek. Eligible uses of the SEP Funds paid under this paragraph include (a) recruiting volunteers to join the Shoal Creek Stream Team; (b) training those volunteers to monitor the water quality and overall ecological health of Shoal Creek, including training in the proper collection and preservation of waters samples; (c) collecting data and information regarding potential sources of pollution to Shoal Creek; (d)

6

conducting stream clean-up and related activities; and (e) making data and information relevant to the ecological health of Shoal Creek available to the public.

15. SEP Funds in the amount of $50,000 shall be paid to Bridging the Gap, Inc., a Missouri nonprofit corporation that is tax-exempt pursuant to section 501(c)(3) of the Internal Revenue Code, and shall be used to develop and implement one or more watershed restoration projects in the Shoal Creek watershed intended to improve water quality in Shoal Creek. Any project funded under this paragraph shall have as its primary purpose the reduction of runoff pollution, the removal of invasive plant species, the replanting of native bank-stabilizing tree and plant species, the phytoremediation of toxic pollutants such as chlorine or copper, or other similar purpose that will directly benefit water quality in Shoal Creek.

16. Prior to the dispersal of any SEP Funds, the Parties shall use their best efforts to negotiate and enter an agreement with MSTWC and Bridging the Gap regarding the use of the SEP Funds that ensures that all SEP-funded activities will be consistent with EPA's Supplemental Environmental Projects Policy (available at https://www.epa.gov/sites/production/files/2015-04/documents/sepupdatedpolicy15.pdf). That agreement shall require that within six months of its receipt of the SEP Funds and prior to the expenditure thereof, the recipient shall deliver a written proposal to the Parties detailing how the SEP Funds will be spent in a manner that will benefit Shoal Creek and be consistent with EPA's Supplemental Environmental Projects Policy. The agreement shall also require that, until the SEP is fully implemented or all SEP Funds are expended, the recipient shall provide a written status report to Plaintiff and Defendants at least once every year.

17. The SEP Funds shall be paid either by electronic funds transfer or by check mailed via certified mail to the following addresses:

7

Missouri Stream Team Watershed Coalition
PO Box 10021
Springfield, Mo 65808

Bridging the Gap, Inc.
1427 W 9th Street
Suite 201
Kansas City, MO 64101

Defendants shall provide Plaintiff, via electronic mail, with proof of payment of the SEP Funds at the time it is made.

## V. PAYMENT OF PLAINTIFF'S COSTS OF LITIGATION

18. Defendants agree to pay, and Plaintiff agrees to accept, payment in the amount of $90,000 in full settlement of Plaintiff's claim for award of its costs of litigation (including reasonable attorney and expert witness fees) pursuant to 33 U.S.C. § 1365(d) up to and including the Effective Date of this Agreement. Said payment shall be made via electronic funds transfer to Earthrise Law Center's IOLTA Trust Account, and Plaintiff's undersigned counsel will provide Defendants' counsel with the account information necessary to make the payment. The payment shall be made within 60 days of Court's order dismissing this case.

19. The Parties reserve the right to seek an award for reasonable attorneys' fees and costs incurred after the Effective Date in connection with any disagreement between the Parties concerning the interpretation, proposed modification, or performance of any aspect of this Settlement Agreement, or to enforce the Court's order dismissing this case. In the event that any Party seeks such fees and costs, the Parties shall attempt to reach agreement as to the appropriate amount of recovery. If the Parties are unable to reach agreement, the aggrieved Party may file an application with the Court for such recovery.

8

20. By this Settlement Agreement, no Party waives any right to contest fees claimed by any other Party or its counsel, including the hourly rate, in any other lawsuit, or continuation of the present action.

21. In the event of late payment of any of the funds due under this Settlement Agreement, Defendants shall pay interest to the funds' intended recipient, and interest shall accrue daily from the first day past the date the sum was due until the date Defendants tender payment. The interest rate, as specified in 28 U.S.C. § 1961, shall apply.

## VI. CONTINUING JURISDICTION OF THE COURT

22. The Clean Water Act's citizen suit provision provides that "[n]o consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General and the [EPA] Administrator." 33 U.S.C. § 1365(c)(3). Without conceding that this Settlement Agreement is a "consent judgment" under the Clean Water Act, the parties have nonetheless voluntarily agreed to provide a copy of the Settlement Agreement to the Attorney General and the EPA Administrator and to allow them 45 days to comment upon it to the parties or to the Court. Plaintiff will promptly submit such copies via certified mail.

23. It is the Parties' intent that the Court retain continuing jurisdiction to enforce the terms and conditions of this Settlement Agreement even after the case is dismissed, consistent with *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) and *Jenkins v. Kansas City Missouri Sch. Dist.*, 516 F.3d 1074 (8th Cir. 2008), *as corrected* (Mar. 27, 2008). Upon execution of this Settlement Agreement, and after the review period described in Paragraph 22 above, the Parties shall jointly file a motion to dismiss pursuant to Federal Rule of Civil Procedure 41(a)(1). In that joint motion to dismiss the Parties shall ask the Court to approve this

9

Settlement Agreement, to incorporate the terms of this Settlement Agreement into its order of dismissal, and to expressly retain jurisdiction for purposes of enforcing this Settlement Agreement. The Parties shall jointly submit a proposed order to that effect along with their joint motion to dismiss.

## VII. MODIFICATIONS, EXTENSIONS AND TERMINATION

24. Any term set forth in this Settlement Agreement (including deadlines and other terms) may be modified only by written agreement of the Parties and approval of the Court.

25. If either Party seeks to modify the terms of this Settlement Agreement (including deadlines and other terms), that Party shall provide the other Party with written notice of the proposed modifications and a request for negotiations as expeditiously as practicable after so determining and as far in advance of any applicable deadlines as practicable. The notice shall show good cause, by written explanation with supporting documentation, justifying the modification.

26. The Parties agree to negotiate in good faith regarding any proposed modification of this Agreement, including any proposed extension of any deadline contained herein. If the Parties agree to a proposed modification or extension, the Parties shall jointly notify the Court of the modification and request Court approval. If the Parties cannot reach agreement regarding the proposed modification or extension within thirty (30) days after receipt of the notice of the proposed modification or extension by the other Party, or within such other period of time to which the Parties mutually agree, then either Party may move the Court for such modification or extension. Pursuant to the Federal Rules of Civil Procedure and the Local Rules for the Western District of Missouri, the non-moving Party shall have the opportunity to respond to such motion, and either Party may seek oral argument before the Court.

27. In the event that any Party fails to meet a deadline and have not sought to modify it pursuant to the procedures set forth above, the other Parties' first formal remedy shall be a motion to enforce the terms of this Settlement Agreement. This Agreement shall not, in the first instance, be enforceable through a proceeding for contempt of court. However, this Agreement does not affect the availability of remedies, including contempt, should any Party fail to comply with court orders issued, subsequent to missed deadlines, regarding the schedule of events to which the parties have agreed.

28. Except for the terms set forth in Section X (which shall survive indefinitely), this Agreement shall terminate automatically upon the completion of the obligations (except for continuing Plan obligations) set forth in Sections III, IV and V above. The parties agree to cooperate in the preparation and filing of any motion or notice required or deemed reasonably necessary to inform the Court of such termination.

## VIII. DISPUTE RESOLUTION

29. In the event of a disagreement between the Parties concerning the interpretation of any provision of this Settlement Agreement or performance thereof, the dissatisfied Party shall provide the other Party with written notice of the dispute and a request for negotiations. The Parties agree to negotiate in good faith regarding any disagreement. If the Parties cannot resolve such disagreement within thirty (30) days after receipt of the notice by the other Party, or within such other period of time to which the Parties mutually agree, then either Party may move the Court to resolve the dispute. Pursuant to the Federal Rules of Civil Procedure and the Local Rules for the Western District of Missouri, the non-moving Party shall have the opportunity to respond to such motion, and either Party may seek oral argument before the Court.

11

30. No motion or other proceeding seeking to enforce this Settlement Agreement or for contempt of Court shall be filed unless the moving Party has followed the procedure set forth in the paragraph above.

## IX. NOTICE TO THE PARTIES

31. Any notice, including correspondence, required or made with respect to this Settlement Agreement shall be in writing and shall be effective upon receipt. For any matter relating to this Agreement, the contact persons are:

| For Plaintiff: | For Defendants: |
|---|---|
| James Saul<br>Earthrise Law Center<br>Lewis & Clark Law School<br>10015 SW Terwilliger Blvd.<br>Portland, OR 97219<br>(503) 768-6929<br>jsaul@lclark.edu | Allen Kacenjar<br>Squire Patton Boggs<br>127 Public Squire, Suite 4900<br>Cleveland, OH 44011<br>(216) 479-8296<br>allen.kacenjar@squirepb.com |
| Heather Navarro<br>Executive Director<br>Missouri Coalition for the Environment<br>3115 S. Grand Blvd., Ste. 650<br>St. Louis, MO 63118<br>(314) 727-0600<br>hnavarro@moenviron.org | Duffield Milkie<br>Executive Vice President and General Counsel<br>Cedar Fair, L.P.<br>One Cedar Point Drive<br>Sandusky, OH 44870-5259<br>(419) 627-2350<br>dmilkie@cedarfair.com |

Upon written notice to the other Parties, any Party may designate a successor contact person for any matter relating to this Agreement.

## X. MUTUAL RELEASE AND COVENANT NOT TO SUE

32. In consideration of the above, upon execution of this Settlement Agreement and entry of an order of the Court dismissing this action with prejudice, the Parties hereby forever release, discharge, and covenant not to assert against each other (by way of the commencement of an action, the joinder of either party in an existing action, or in any other fashion) any and all

12

Case 4:15-cv-00901-DGK   Document 52-1   Filed 11/14/16   Page 12 of 16

claims, causes of action, suits or demands of any kind whatsoever in law or in equity, that either party may have had, or may now or hereafter have, against each other and/or their respective successors, assigns, offices, agent, employees, board of directors, and all persons, firms, and corporations having an interest in them, from any and all alleged violations claimed in the Complaint, up to and including the Effective Date of this Settlement Agreement.

33. Nothing in this Settlement Agreement shall preclude Plaintiff from bringing any challenges to any future NPDES permits issued to Defendants by MDNR, or from bringing any civil action based upon on any violations of the CWA by Defendants that occur after the Effective Date of this Agreement.

34. Nothing in this Settlement Agreement shall limit Plaintiff's ability to make any legal or factual assertions necessary to support any argument in the event that the Parties are before the Court pursuant to Section VII ("Modifications and Extensions") or Section VIII ("Dispute Resolution").

## XI. OTHER TERMS AND CONDITIONS

35. This Settlement Agreement shall become effective upon (a) execution by all parties, and (b) entry of an order of the Court approving this Settlement Agreement, incorporating the terms of this Settlement Agreement into its order, and dismissing this action with prejudice.

36. Nothing in this Settlement Agreement shall be construed to limit the equitable powers of the Court to modify these terms upon a showing of good cause by any party.

37. It is hereby expressly understood and agreed that Plaintiff and Defendants jointly drafted this Settlement Agreement. Accordingly, the Parties hereby agree that any and all rules of

construction to the effect that ambiguity is construed against the drafting party shall be inapplicable in any dispute concerning the terms, meaning, or interpretation of this Agreement.

38. Whenever possible, each provision of this Settlement Agreement shall be interpreted in such a manner as to be effective and valid.

39. The Parties agree that this Settlement Agreement was negotiated and entered into in good faith and that it constitutes a settlement of claims that were vigorously contested, denied, and disputed by the Parties. Except as expressly stated herein, nothing in this Agreement shall be interpreted as, or constitute, an admission or evidence of any issue of fact or law, wrongdoing, misconduct, or liability on the part of any party.

40. Except as expressly provided in this Settlement Agreement, none of the parties waives or relinquishes any legal rights, claims, or defenses it may have. Nothing in this Agreement shall be construed to make any other person or entity not executing this Agreement a third-party beneficiary to this Agreement.

41. This Settlement Agreement may be executed in any number of counterpart originals, each of which shall be deemed to constitute an original agreement, and all of which shall constitute one agreement. The execution of one counterpart by any Party shall have the same force and effect as if that Party had signed all other counterparts.

42. Subsequent to entry of this Settlement Agreement by the Court, if any term, condition, or provision of this Agreement, or the application thereof to any person or circumstance, shall to any extent be held by a court of competent jurisdiction or rendered by the adoption of a statute by the United States invalid, void, or unenforceable, the remainder of the terms, covenants, conditions, or provisions of this Agreement, or the application thereof to any

person or circumstance, shall remain in full force and effect and shall in no way be affected, impaired, or invalidated thereby.

43. This Settlement Agreement is the entire agreement between Plaintiff and Defendants concerning Plaintiff's claims alleged in the Complaint filed in this Action. All prior conversations, meetings, discussions, drafts, and writings of any kind are specifically superseded by this Agreement.

44. Each person signing this Settlement Agreement certifies that he or she has been duly authorized to enter into and execute the terms and conditions of this Agreement by the party on whose behalf it is indicated that the person is signing, and to legally bind such party to this Agreement. By signature below, all of the Parties consent to the entry of this Agreement.

FOR PLAINTIFF:

Dated: 11/14/16

By: *[signature]*
James N. Saul (*Pro Hac Vice*)
Lia Comerford (*Pro Hac Vice*)
Earthrise Law Center
Lewis & Clark Law School
10015 SW Terwilliger Blvd.
Portland, OR 97219
jsaul@lclark.edu
comerfordl@lclark.edu
(503) 768-6929 (Saul)
(503) 768-6823 (Comerford)

FOR DEFENDANTS:

Dated: 11/14/16

By: *[signature]*
Allen A. Kacenjar (Ohio Bar #0071224)
John D. Lazzaretti (Ohio Bar #0080780)
Squire Patton Boggs (US) LLP
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114
allen.kacenjar@squirepb.com
john.lazzaretti@squirepb.com
(216) 479-8500

15

Robert Menees
Great Rivers Environmental Law Center
319 N. Fourth St., Suite 800
St. Louis, MO 63102
bobmenees@greatriverslaw.org
(314) 231-4181
Fax (314) 231-4148

*Counsel for Plaintiff Missouri Coalition
for the Environment*

William Ford (Mo. Bar #35116)
Lathrop & Gage
2345 Grand Boulevard
Kansas City, Missouri 64108
WFord@LATHROPGAGE.COM
(816) 460-5817
Fax (816) 292-2001

*Counsel for Defendants Worlds of Fun,
LLC and Cedar Fair, L.P.*